UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KATHLEEN MARIE BENOIT,

   Plaintiff,

       v.                                                         No. 3:19-cv-00443 (WIG)

ANDREW M. SAUL,
Commissioner of
Social Security[1],

   Defendant.

————————————————X

## RULING ON PENDING MOTIONS

This is an administrative appeal following the denial of the plaintiff, Kathleen Marie Benoit's, application for Title II disability insurance benefits ("DIB"). It is brought pursuant to 42 U.S.C. §405(g).[2] Plaintiff now moves for an order reversing the decision of the Commissioner of the Social Security Administration ("the Commissioner"), or in the alternative, an order

---

[1] The President nominated Andrew M. Saul to be Commissioner of Social Security; the Senate Confirmed his appointment on June 4, 2019, vote number 133. He is substituted pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to amend the caption to comply with this substitution.

[2] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. §§ 404.929; 416.1429. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. §§ 404.967; 416.1467. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

remanding this case for a rehearing. [Doc. #11]. The Commissioner, in turn, has moved for an order affirming his decision. [Doc. #12]. After careful consideration of the arguments raised by both parties, and thorough review of the administrative record, the Court grants Plaintiff's motion to reverse/remand and denies the Commissioner's motion to affirm.

## LEGAL STANDARD

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant will meet this definition if his or her impairments are of such severity that the claimant cannot perform pervious work and also cannot, considering the claimant's age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner must follow a sequential evaluation process for assessing disability claims. The five steps of this process are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the Listings). If so, and it meets the durational requirements, the Commissioner will consider the claimant disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe

impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. *See* 20 C.F.R. §§ 404.1520; 416.920. The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive…." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla or touch of proof here and there in the record." *Id.* If the Commissioner's decision is supported by substantial evidence, that decision will be sustained,

even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

I. **BACKGROUND**

    A. **Facts**

    Plaintiff filed her DIB application on December 14, 2014, alleging an onset of disability as of April 13, 2015. Her claim was denied at both the initial and reconsideration levels. Thereafter, Plaintiff requested a hearing. On December 4, 2017, a hearing was held before Administrative Law Judge Thomas Merrill ("the ALJ"). Plaintiff, who was represented by counsel, and a vocational expert ("VE"), testified at the hearing. On February 14, 2018, the ALJ issued a decision denying Plaintiff's claims. Plaintiff timely requested review of the ALJ's decision by the Appeals Council. On January 24, 2019, the Appeals Council denied review, making the ALJ's decision the final determination of the Commissioner. This action followed.

    Plaintiff was fifty-one years old and six months on the alleged onset of disability date. (R. 299). She completed college with a degree in international development. (R. 285). Plaintiff has past employment as a legislative assistant, fundraising assistant for a hospital, and as a philanthropy assistant and coordinator for a non-profit. (R. 285). Plaintiff's complete medical history is set forth in the Statement of Facts filed by the parties. [Doc. ##11-1; 12-1]. The Court adopts these statements and incorporates them by reference herein.

    B. **The ALJ's Decision**

    The ALJ followed the sequential evaluation process to determine whether Plaintiff was disabled under the Social Security Act.

    At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 13, 2015. (R. 17). At Step Two, the ALJ found Plaintiff had the following severe

impairments: degenerative spondylolisthesis (lumbar spine); s/p bilateral knee replacements; and osteoarthritis. (R. 17). At Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 24). Next, the ALJ determined Plaintiff retains the following residual functional capacity[3]:

> to perform light work as defined in 20 C.F.R. 4041567(b) except she is able to lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently; to stand and/or walk for up to 6 hours in an 8-hour workday; and to sit for up to 6 hours in an 8-hour workday. She is able to climb stairs and ramps frequently and to ladders, ropes and scaffolds occasionally. She is able to frequently balance and perform stooping, kneeling, crouching and crawling occasionally. She must avoid concentrated exposure to extreme cold, vibration, and hazards, including unprotected heights and hazardous machinery.

(R. 25).

At Step Four, the ALJ found that, through the date last insured, Plaintiff was capable of performing her past relevant work an administrative assistant and/or fundraiser.[4] (R. 30). The ALJ did not proceed to Step Five. Accordingly, the ALJ determined that Plaintiff was not disabled from April 13, 2015, her alleged onset date, through February 14, 2018, the date of the ALJ's decision. (R. 31).

## II. DISCUSSION

Plaintiff raises several arguments in support of her Motion to Reverse, which the Court will address in turn.

---

[3] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his or her limitations. 20 C.F.R. §§404.1545(a)(1); 416.945(a)(1).
[4] Plaintiff's date last insured was March 31, 2019.

**A. Step Two**

Plaintiff argues that the ALJ erred at Step Two by conflating his analysis of severity and duration. [Doc. #11-2 at 12-14]. At Step Two, the ALJ found that Ms. Benoit "has no severe mental health impairment" despite a diagnosis of Bipolar 2 Disorder and depression, multiple psychiatric hospitalizations with suicidal ideation, a lengthy mental health treatment history and opinion evidence from her treatment providers addressing her functional ability to work.

In his decision, the ALJ found that

> While the claimant's records, as further discussed below, reveal evidence of treatment received for an affective disorder (variedly diagnosed as depression and a bipolar II disorder), which the claimant alleges also limits her ability to work (Exhibit 3E-2), the undersigned finds that the claimant's medically determinable mental impairments, considered singly and in combination, have not caused more than minimal limitation in her ability to perform basic mental work activities for any consecutive 12-month period and are, therefore, non-severe.

(R. 18)).

Plaintiff argues that, "[h]ad the ALJ gone on to consider Ms. Benoit's bipolar 2 (or depression) in an adequate manner later in the decision, in combination with Ms. Benoit's other impairments, any error might arguably have been harmless." [Doc. #11-2 at 12 (citing *Goulart v. Colvin*, No. 3:15-cv-01573 (WIG), 2017 WL 253949, at *3 (D. Conn. Jan. 20, 2017) ("An AJL's finding that an impairment is not severe at Step Two is harmless error when, as here, the ALJ finds other severe impairments and continues with the sequential evaluation. *See Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 402 (D. Conn. 2012), *aff'd*, 515 F. App'x. 32 (2d Cir. 2013))]. "Although the ALJ 'proceeded with the sequential process' the <u>critical point</u> is that Ms. Benoit's ostensible 'non-severe' Bipolar 2 or depression was not meaningfully 'considered as part of the remaining steps.'" [Doc. #11-2 at 13 (quoting *Goulart*, 2017 WL 253949, at *3) (emphasis added). The Court agrees.

6

At step two of the sequential evaluation process, the ALJ considers whether a claimant's impairment is (1) medically determinable or non-medically determinable, and (2) severe or non-severe. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 416.920(a)(4)(ii); SSR 85-28, 1985 WL 56856. Under the Commissioner's regulations, an impairment is "non-severe" if it "does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521; 20 C.F.R. § 416.921. Conversely, an impairment is "severe" if it *does* significantly limit a claimant's physical or mental ability to do basic work activities. The phrase, "significantly limits," however is not synonymous with "disability." Rather, the ALJ's analysis at step two is a threshold test designed to screen out *de minimis* claims.

Here, the ALJ found no non-exertional impairments in the RFC and there was no further analysis at Steps Three or Four with regard to any impact her mental health would have on her ability to work. This is particularly troubling because plaintiff had two psychiatric hospitalizations in the 15 months preceding the ALJ's February 2018 ruling. Moreover, the State agency psychological opinions, that the ALJ assigned "substantial weight" to, <u>predated</u> these hospitalizations. (R. 304 ( 1/6/16); R. 320-21 (7/8/16)).

In November 2016, Plaintiff was hospitalized for 8 days following a suicide attempt by taking "Ambien10mg 15 tabs and drinking 6 beer with suicidal intent." (R. 722-27). On admission, Plaintiff reported "being increasingly depressed in the past couple of months." (R. 724). "Client expressed that her inner voice was saying 'I want to die' for about two months prior to the suicide attempt, then two days before the suicide attempt, her inner voice started saying 'I want to die.'" (R. 728). Her husband reported that he "'was not shocked this happened' because he has seen her becoming more depressed in the past several months." (R. 725). Plaintiff also reported that she made a suicide attempt in 2011, overdosing on Klonopin and Tramadol and

7

reported an overdose in high school, over twenty years of therapy, and episodes of hypermania. (R. 725; *see* R. 540-49 (2011 five day psychiatric hospitalization)). On release, Plaintiff attended a PHP ("partial hospitalization treatment") program from December 19, 2016 through January 24, 2017. (R. 743-46). She transitioned to outpatient care with her treatment providers Tyler Booth, LCSW, and Kerry Williamson, APRN. (R. 746).

Approximately six months later, on May 29, 2017, Plaintiff was admitted for another inpatient psychiatric hospitalization after presenting with "increased depression and suicidal ideation to cover the exhaust pipe in her car." (R. 801). She reported an "increase of depression over the past several weeks with poor energy, poor appetite, poor sleep, feelings of hopelessness and worthlessness, and suicidal ideation." (R. 801). Plaintiff was discharged on June 2, 2017, to continue treatment with her outpatient providers." (R. 802).

There are no treatment notes in the record from LCSW Tyler Booth <u>after</u> April 13, 2016, which was before her two psychiatric hospitalizations. (R. 631-636). Indeed, the record only contains treatment notes for five therapy sessions, raising a question whether there is a gap in the record. (R. 562 (3/23/15); R. 565 (6/15/15); R. 568 (9/16/15); R. 631 (1//5/16); R. 634 R. 4/13/16). Throughout this time frame, LCSW Booth described Plaintiff's mental health as "stable" "on solid ground" and "returned to maintenance based treatment." A Medical Source Statement completed by LCSW Booth on January 4, 2016, reflects this period of stable mental health with medication management and therapy. (R. 620-24). In April 2016, Booth reported that Plaintiff "continues to be at baseline." (R. 635). Again, this last treatment record was approximately eight months <u>before</u> Plaintiff's November 2016, suicide attempt and psychiatric hospitalization.

On August 24, 2017, LCSW Booth completed a second Medical Source Statement reciting a treatment history beginning in November 2011. (R. 808-13). He assessed a current GAF of 43, stating that a "longstanding minor depression & controlled mood disorder has become debilitating due to impact of physical ailments." (R. 808-09). "Combination of weekly group and biweekly individual with increased medications keeps SI at bay, but hospitalization has still been needed 2x in the last 6 months." (R. 809). Relevant "signs and symptoms" are detailed (R. 808-09), as well as, Plaintiff's medications and the side-effects. (R. 810). His stated prognosis was, "I do not believe Ms. Benoit will be able to return to work due to her combination of mental health & physical health disabilities." (R. 810). He opined that her impairment would last or could be expected to last at least twelve months. (R. 810). When asked, "Does the psychiatric condition exacerbate your patient's experience of pain or any other physical symptom?" (R. 810). He responded, "the contrary seems to be most predominant. There is a cycle of mental & physical health agitation." (R. 810). LCSW Booth opined that he anticipated that Plaintiff's impairments or treatment would cause her to be absent from work "more than three times a month." (R. 811). LCSW Booth made specific findings to support his opinion. With regard to mental abilities and aptitude needed to do unskilled work, he found that Plaintiff had "no useful ability to function" to: maintain attention for two hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; complete a normal workday without interruption from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and deal with normal work stress. (R. 811). He further explained that, "Mrs. Benoit presents as unable to complete basic tasks around the house or related to treatment due to severe depression and physical health limitations." (R. 812). With regard to mental

9

abilities and aptitudes needed to do semiskilled and skilled work he found that Plaintiff had "no useful ability to function" when dealing with stress of semiskilled and skilled work and a "seriously limed, but not precluded" ability to understand, remember, and carry out detailed instructions; and set realistic goals or make plans independently of others. (R. 812). He explained that Plaintiff "is easily overwhelmed and has become increasingly anxious & incapacitated over the past 6 months." (R. 812). He assessed that Plaintiff has an extreme limitation in activities of daily living; a marked difficulty in maintain social functioning, with frequent deficiencies in concentration, persistence or pace resulting in a failure to complete tasks in a timely manner, and continual episodes of decompensation. (R. 813). He added that Plaintiff "has severe physical disabilities. I supported her filing for disability for these reasons 2 years ago. At that time her mental health was being successfully managed. Her mental health has deteriorated so significantly in the past year that I now support disability for mental health reasons as well." (R. 813).

LCSW Booth appended a letter dated July 5, 2017, to this Medical Source Statement which states, in relevant part, that

> After five years without suicide ideation, Kathleen has been hospitalized twice in the past six months and has needed to increase her therapy and make medication adjustments in between the hospitalizations. Although able to manage her mental health when her physical health was more intact, her ongoing physical disability when paired with her mental health challenges truly renders Kathleen incapable of working.
>
> Kathleen shares my belief that challenges need to be met with innovation and hard work not pity and that everyone should work and be a productive member of society. Running a health center with a target population of people who are dealing with poverty and mental challenge, I have developed an extremely high threshold around labeling someone as mentally disabled. Kathleen understand that threshold and both she and I have been committed to work in treatment to keep her emotionally capable of work. However, having [worked] with Kathleen for so long, and seeing her unsuccessful attempts of late to maintain her baseline, I believe that she has become both physically and mentally too disabled to work.

10

> As such, I am recommending that Kathleen's application for SSDI be reviewed
> and accepted on the grounds of emotional disability in addition to what I see as
> ample grounds for physical disability.

(R. 814).

APRN Kerry Williamson has treated Plaintiff for medication management every two to six weeks since August 2007. (R. 1072; R. 1071-1172). On July 18, 2017, when APRN Williamson completed a Medical Source Statement, she had treated plaintiff for nearly ten years for Axis I: Bipolar 2 disorder; Post-traumatic Stress Disorder, and Alcohol Abuse Disorder. (R. 1072-78). Symptoms were detailed, and clinical findings included, "episodes of severe depression with suicidal ideation, plan, intent; persistent negative/hopeless thinking, chronic moderate severe level of anxiety; mood lability," with decreased concentration, focus, attention, energy and motivation and disruption of sleep. (R. 1073). With regard to Plaintiff's response to treatment, APRN Williamson stated that

> Kathleen has extended periods of symptom stabilization in her past history-more
> recently she has had shorter periods of symptom and functional stability and more
> frequent episodes of severe depression with suicidal risk-necessitating psychiatric
> hospitalizations and occasionally hypomanic episodes without psychosis. Her
> treatment has included inpatient hospitalizations, partial hospital program, more
> intensive [illegible] psych. therapy and more frequent psychopharmological
> monitoring and medication changes/adjustments.

(R. 1074). As of July 6, 2017, Plaintiff was prescribed Seroquel, Lamictal, Cogentin, Wellbutrin, Prazosin, and folic acid. (R. 1075). "Kathleen has experienced multiple side effects including sedation, lethargy, unsteady balance, increased or decreased appetite, cognitive clouding, confusion & memory loss, severe dry mouth and body weakness." (R. 1075). APRN Williamson opined that Plaintiff's prognosis was "guarded [due to] the increased instability of her mood & overall psychiatric condition. (R. 1075). She further stated that Plaintiff's psychiatric condition exacerbates her experience of pain and other physical symptoms, stating that Plaintiff "has multiple back, hip, knee, feet abnormalities

11

that contribute to her chronic pain and limited physical abilities." (R. 1075). APRN assessed that Plaintiff would be expected to be absent from work more three times a month and that she is unable to complete a normal workday and workweek without interruption from psychologically based symptoms, and she would be unable to perform at a consistent pace without an unreasonable number and length of rest periods. (R. 1076). "Mood (depression or hypomania) effects abilities in all areas. Sedation & mental fogginess which are side effects of medications significantly effects all areas of function, anxiety which fluctuates also a factor that negatively affects her LOF." (R. 1077). APRN Williamson indicated that Plaintiff would be unable to deal with the stress of semi-skilled or skilled work. (R. 1077). Finally, APRN Williamson assessed that Plaintiff would have frequent deficiencies in concentration, persistence or pace resulting in a failure to complete tasks in a timely manner and would experience "repeated (three or more)" episodes of deterioration or decompensation due to "severe chronic back pain; knee pain; SI joint pain-limits ability to stand/sit for lengthy periods of time-physical limitations with lifting, bending, & all physical endurance activities." (R. 1078).

In light of this evidence, it is difficult to see how the ALJ concluded that Benoit's mental impairments were so *de minimus* as to be non-severe, since this evidence provides more than "minimal limitations" on her ability to carry out work-related activities.

Plaintiff correctly states that "[a]lthough the ALJ 'proceeded in the sequential process' the critical point is that Ms. Benoit's ostensible "non-severe' Bipolar 2 or depression was *not* meaningfully 'considered as part of the remaining steps.'" [Doc. #11-1 at 13 (emphasis in original)].

> Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or

12

combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued.

Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *4 (S.S.A. Jan. 1, 1985). The record of psychiatric hospitalizations, opinions of Plaintiffs mental health treating clinicians and APRN Williamson's treatment records provide substantial evidence that plaintiff's mental impairments should have been considered by the ALJ at the subsequent steps in the evaluation process in combination with her physical impairments. It is noted that the treatment records, function reports, January 2016 psychological evaluation from LCSW Booth and the 2016 opinions from State Agency physicians relied on by the ALJ to support his finding that Plaintiff's mental impairments are non-severe predate her decline in mental functioning in November 2016; prior to her suicide attempt and hospitalization. Even though the ALJ found that Plaintiff's mental health impairment was non-severe, the ALJ was still required to evaluate any limitation resulting from this impairment at each step of the sequential evaluation process. 20 C.F.R. §404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' ... when we assess your residual functional capacity."); *see also* 20 C.F.R. § 416.945(a)(2). This is an error requiring remand for further consideration.

Plaintiff also argues that the ALJ inappropriately conflated the "'durational requirement' with the 'severity requirement'" at Step Two. [Doc. #11-1 at 13]. The Commissioner argues that "[t]he ALJ makes no mention of the 12-month durational requirement in any part of the special technique analysis, and Plaintiff points to none." [Doc. #12 at 10]. However, the ALJ clearly stated at Step Two that Plaintiff's "medically determinable mental impairments, considered singly and in combination, have not caused more than minimal limitation in her ability to

13

perform basic mental work activities for any consecutive 12-month period and are, therefore, non-severe." (R. 18).

> Unlike the severity analysis, the question of impairment duration requires the ALJ to evaluate whether the impairment has lasted, or is expected to last, for a continuous period of at least twelve (12) months. 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). Other Courts have found legal error when a decision inappropriately conflates the analysis of severity and duration. *See Snedeker v. Colvin*, No. 3:13-cv-970, 2015 WL 1126598, at *4 (N.D.N.Y. Mar. 12, 2015); *Gray v. Astrue*, No. 04-cv-3736, 2009 WL 1598798 at *5 (S.D.N.Y. June 8, 2009); *Stadler v. Barnhart*, 464 F. Supp. 2d 183, 189 (W.D.N.Y. 2006) ("To state that an impairment is not severe because it does not meet the twelve-month requirement, then, is inconsistent with the Commissioner's own interpretation of the regulations.").

*White v. Colvin*, Civil Action No. 3:16-cv-0322, 2018 WL 6537150, at *7 (M.D. Pa. Nov. 21, 2018). Because the ALJ improperly conflated the issues of impairment duration with impairment severity at Step Two, the Court finds that the ALJ's conclusion that Plaintiff's mental health impairment is non-severe because it does not meet the durational requirement is error.

**B. RFC**

Under the Commissioner's regulations, *all* impairments, both severe and non-severe, must be accounted for in an ALJ's RFC assessment.

> [E]ven if an ALJ erroneously determines at step two that one impairment is not "severe," the ALJ's ultimate decision may still be based on substantial evidence if the ALJ considered the effects of that impairment at steps three through five. However, where it appears that the ALJ's error at step two also influenced the ALJ's RFC analysis, the reviewing court may remand the matter to the Commissioner for further consideration. *See Nosse v. Astrue*, No. 08-CV-1173, 2009 WL 2986612, at *10 (W.D. Pa. Sept. 17, 2009) ("Until the ALJ explains why plaintiff's mental conditions are not severe … and provides reasons for rejecting [doctor's] diagnoses and opinions, the court is unable to determine whether the ALJ's RFC determination is supported by substantial evidence.").

*McClease v. Comm'r of Soc. Sec*, No. 8-CV-1673, 2009 WL 3497775, at *10 (E.D. Pa. Oct. 28, 2009). "Under the regulations, once the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining

steps. 20 C.F.R. § 404.1545(e)." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003).

The medical record in this case contained mental health treatment notes, records from three inpatient psychiatric admissions for suicide attempts and/or suicidal ideation (in September 2011 (R. 540-59), November 2016 (R. 722-27), and May 2017 (R. 799-803)), Medical Source Statements from mental health treatment providers (in January 2016 (R. 631-36) and July 2017 (R. 808-14, 1072-78)), and Plaintiff's testimony at the hearing. These treatment records reflect that Plaintiff's mental health treatment providers concluded that Plaintiff's mental impairments had "more than a minimal effect" on Plaintiff's ability to work. SSR 85-28, 1985 WL 56856, at *4. Because Plaintiff presented medical evidence and made the *de minimus* showing of medical severity, the ALJ should have considered Plaintiff's non-exertional mental impairments, whether severe or not, as part of the remaining steps of the sequential evaluation. *Snedeker*, 2015 WL 1126598, at *7 ("All impairments, i.e., both severe and nonsevere, must be factored into a residual functional capacity determination that precedes sequential Step 4."); *Melendez v. Colvin*, No. 1:13-CV-1068, 2015 WL 5512809, at *5 (N.D.N.Y. Sept. 16, 2015) ("the omission of one or more severe impairments at step two may only be deemed harmless where the ALJ also later considers the effects from the omitted impairment as part of the ultimate RFC determination."). Here, the ALJ failed to mention *any* limitations from Plaintiff's mental impairments when formulating the RFC. This error is grounds for remand for further considerations.

The Court's role in reviewing a disability determination is not to make its own assessment of the plaintiff's functional capabilities; it is to review the ALJ's decision for reversible error. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this ruling.

On remand, the Commissioner will address the other claims of error not discussed herein. *See Moreau v. Berryhill*, Civil Action No. 3:17-CV-00396 (JCH), 2018 WL 1316197, at *4 (D. Conn. Mar. 14, 2018)("Because the court finds that the ALJ failed to develop the record, it also suggests that the ALJ revisit the other issues on remand, without finding it necessary to reach whether such arguments would themselves constitute legal error justifying remand on their own."); *Snedeker,* 2015 WL 1126598, at *8 (finding it is pointless to address Snedeker's remaining points of error until his low back impairment is factored into a residual functional capacity finding. "The outcome of this case in its present posture will not change whether or not these additional points are meritorious or baseless. Addressing them administratively on remand, however, may avoid a second costly action for judicial review.").

## III. CONCLUSION

For the reasons stated, Plaintiff's Motion to Reverse the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing **[Doc. #11]** is **GRANTED**. Defendant's Motion for an Order Affirming the Commissioner's Decision **[Doc. #12]** is **DENIED**.

In light of the Court's findings above, it need not reach the merits of plaintiff's other arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion. On remand, the Commissioner shall address the other claims of error not discussed herein.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. §636(c)(3); Fed. R. Civ. P. 73(c). The Clerk is directed to

16

enter judgment in favor of the Plaintiff and close this case.

SO ORDERED, this 14th day of November, 2019, at Bridgeport, Connecticut.

    */s/ William I. Garfinkel*
WILLIAM I. GARFINKEL
United States Magistrate Judge